Good morning, Your Honors. Counsel. May it please the Court. I am here representing the Crown Paper Liquidating Trust, which is appealing a district court ruling that vacated a preliminary injunction that had been entered by the Bankruptcy Court. You may want to state your name. I'm not sure you do. Malcolm Loeb, L-O-E-B. This is for our records. We need to have that. Thank you. The Bankruptcy Court, after briefing an oral argument, enjoined appellees and cross-appellants from continuing to prosecute a lawsuit that they had filed in the Chancery Court of Delaware. The Bankruptcy Court found that that lawsuit violated the Barton Doctrine, which is a bankruptcy doctrine that's been around for 118 years. And it also interfered with the Bankruptcy Court's administration of the Crown Bankruptcy Estate. The Delaware action seeks to enjoin the bankruptcy trustee from proceeding with litigation that he was authorized to do by the confirmed plan in the bankruptcy in the California District Court. In fact, it's litigation that Fort James, one of the appellees, actually had begun some 18 months before the Delaware case was filed. May we turn for a second to the administration of the bankruptcy case? Yes. We have a confirmed plan. What's left to administer? Currently, the liquidating trust, which was set up to liquidate the entire estate, is in the process of filing causes of actions, including preference claims, the fraudulent conveyance claims that are at issue in the California litigation, other claims, as well as marshaling and liquidating other assets of the estate. It's still subject to state administration and by the court. Yes, of course. And the confirmed plan expressly reserves jurisdiction over the liquidating trustee for all of that conduct until the end of the bankruptcy case, which has not yet occurred. And does the plan contemplate that at the end of the liquidation that the court will distribute the funds, or is the distribution set forth in the plan? The distribution will be pursuant to a liquidating trust agreement that was developed with the liquidating trust, over which the court approved, certainly, and over which the court still retains exclusive jurisdiction. How many other causes of action has the trust filed other than this? I believe the trust filed 650 preference actions, almost all of which have been either resolved in some way. The trust filed fraudulent conveyance claims against the Fort James entities, which are one of the appellees here, and filed a series of actions against Crown's former financial advisors, auditors, and certain insiders and directors, which is also one of the issues in the California litigation. That particular case has been dismissed by the district court and is on appeal, and at some point in the future I'll be back up here on that case. Yes, the reason for my questioning is it's often in bankruptcy we get a slice of the case, and occasionally other things have happened in the bankruptcy that affect our consideration of it. So I appreciate you bringing me up to date on that. Well, I can answer any question that the court has. I'm very familiar with all the proceedings. In fact, what the court just said is really part and parcel of why we're here today. As I said, that Delaware action that was filed that we got an injunction against, Judge Newsom of the Bankruptcy Court ruled and enjoined that action, in part because he felt that that action was just a little slice of what was already going on in California. Now, the district court vacated the injunction, as I mentioned earlier, and although the district court made several rulings in the trustees' favor, it did make three mistakes, and those are the mistakes that we've appealed. First, it held that the Bankruptcy Court was obligated to consider whether or not the trustee had waived his right to assert the Barton Doctrine. And the short answer to that question is that the Barton Doctrine implicates subject matter jurisdiction. There are numerous cases within this circuit and throughout other circuit courts in the United States. Indeed, Barton itself states that it implicates subject matter jurisdiction, and subject matter jurisdiction just cannot be waived. So that type of an inquiry is unnecessary. Second, the district court found that the trustee had not established that a forum selection clause in a pre-petition option and settlement agreement that had been entered into between Crown and Fort James was not enforceable or would not be enforceable. And the short answer to that question is, even assuming the validity of the forum selection clause, it does not and cannot trump the Bankruptcy Court's inherent power under 11 U.S.C. Section 105, or under the Barton Doctrine, to control matters within its own jurisdiction. A private contractual pre-petition forum selection clause cannot by itself confer subject matter jurisdiction on a court in violation of the Barton Doctrine or in violation of the Bankruptcy Court's exclusive jurisdiction over matters that are before it. And third, the district court ruled that the trustee had not demonstrated a real threat of irreparable harm. Well, the short answer to that is, number one, irreparable harm is not a factor under the Kashani test. Kashani is a case from the Bankruptcy Appellate Panel in the Ninth Circuit that sets out the factors that a court should look at when a party comes to it for seeking permission to sue someone outside of the jurisdiction. Irreparable harm is not one of those factors. Judge Newsom in the Bankruptcy Court performed a Kashani analysis and, after doing so, relied on his power under 105 to enjoin the action. Well, Kashani doesn't bind us, nor did it bind the Bankruptcy Court particularly. It's an – I think it's a relatively good opinion, but ask – or tell me why you think we should adopt the logic when we have all these other cases talking about the considerations you take – the traditional considerations of preliminary injunction. I think it really goes to the fundamental principles that animate both Section 105A and also underlie the Barton Doctrine, which are that the Bankruptcy Court has been given wide discretion and substantial power to control its own jurisdiction and to control the administration of the states that are before it. And I think if you were to hamstring a Bankruptcy Court into conducting a Rule 65 preliminary injunction every time it perceived an infringement to its own jurisdiction, it would make it much more difficult for the Court to – to carry out this statutorily and legislatively empowerment. Indeed, there are numerous cases that authorize an injunction under Section 105, but that are not Rule 65 or not traditional preliminary injunction cases, including the In re Jackson case, which is a Ninth Circuit bankruptcy appellate opinion case, the DeLorean case from the Sixth Circuit. So I guess the bottom line is what we had here was Fort James filing a lawsuit in Delaware that violated the Barton Doctrine. Then they belatedly come to the Bankruptcy Court seeking permission to file that lawsuit. The Bankruptcy Court does a Kashani analysis and says you're not entitled to permission there. What is the Bankruptcy Court to do? Does it – does it then have to conduct another whole preliminary injunction analysis, or can it rely on its power under 105, which authorizes it to enter injunctions to control its own jurisdiction? I think the answer is clear, that that – the Court is already authorized to do that. Therefore, the consideration of irreparable harm is not part of that calculus. Now, Kashani has five factors, and those factors are – you know, you have to meet those factors in order to – for the Court to fairly deny permission. And in our case, I think we need every one of them, even though Kashani itself says we only have to meet one. And if the Court will indulge me, I'll go through the factors quickly. The first factor is, does 28 U.S.C. section 959 apply? And as the Court knows from reading the briefs, that is a statutory exception that essentially incorporated the dissent of Barton. And what that says in a sentence is, if the trustee is conducting the business of the debtor, just carrying on the business, you don't need permission, because it's not like they're really in front of the bankruptcy court. They're still doing exactly what they – what they had been doing previously. Well, in our case, it's clear. This is a liquidating trust. It's not conducting business at all. Right. Okay. The second Kashani element is, do the claims pertain to conduct by the trustee while he is administering the estate? So, in other words, are they core claims? Are they related to claims? Well, the trustee believes that these are core claims. They're attempts to interfere with his liquidation. Indeed, section 157 confers core jurisdiction on a bankruptcy court expressly to determine proceedings affecting liquidation of the assets of an estate. At a minimum, it's related to, and Judge Newsom found that. I mean, he expressly found that it was related to at a minimum. The third Kashani factor is whether the trustee is acting within the scope of his authority. And, again, we have a confirmed bankruptcy plan. We have a liquidating trust agreement, both of which were signed off and approved by the court. That expressly authorized this trustee to bring the exact claims against these exact defendants. So I think there's no question that he was acting pursuant to his express authorization. Fourth Kashani factor is whether or not they're seeking to charge the trustee personally. And the answer here, too, is yes, the Delaware action seeks fees and costs from the litigation action as damages. Now, Fort James asserts that, well, we've really only filed a declaratory relief action. Well, you look at their complaint, it seeks three things. It seeks declaratory relief, an injunction, and a breach of contract in the form of damages and specific performance. Fort James also argues that it's suing the trustee merely as a successor, not as a trustee, I guess, not in his personal capacity. Well, the relevant inquiry is not what you're calling them, but whether the trustee is being sued while he's administering the state. And there's no question that the liquidation of the estate is still going on. Fort James also argues that no such permission was needed to sue the trust itself. They could sue the trust, you know, drop the trustee out and just continue against the trust. Well, that's – that posits a meaningless distinction, I think. The Bankruptcy Court has jurisdiction not only over the trustee, but over the trust. And, indeed, the trust can't act without the presence of a trustee. And any claim against the trust, the trustee is an indispensable party. Moreover, that was already tried in the DeLorean case. In fact, there the trustee was actually dismissed. The case went forward against the trustee's lawyers. And the court said, no, the distinction is meaningless. It's – if the person is a functional equivalent or performing the tasks that are authorized under the bankruptcy law, they get that same protection from the Barton Doctrine. And then, finally, Kashani Factor V asks whether or not the claims involve negligent or willful misconduct, because if they do, arguably the trustee's not really acting as a trustee outside of his authorized powers. Here, however, Fort James has admitted that they've not alleged any misconduct by the trustee. Therefore, every factor weighs in favor of the trustee. The Bankruptcy Court was fully empowered under Section 105A to deny permission to Fort James. After denying permission, what was the Bankruptcy Court to do? Well, I think the answer is clear. It relied on its inherent power under 105 to enjoin the prosecution of an action that Fort James had no right to prosecute in the beginning. You have about a minute left. Do you want to reserve it? I have a lot to say. But I will reserve my last minute, if that's okay. Thank you, Your Honor. Good morning, Your Honors. My name is Kristen Miles with Munger, Tolson, Olson. I'm here on behalf of Fort James and McGuire Woods. I represent Fort James and I'm speaking on behalf of McGuire Woods as well, the appellees, cross-appellants in this matter. The first point I'd like to make, Your Honors, is that the injunction that was entered by the Bankruptcy Court was improper primarily for the reason that the law in this case, based both on the nature of that action and on the nature of the bankruptcy proceeding that was then concluded and deposited in a trust, and also based on the law, which I'll begin first with the Delaware action. The Delaware action was filed by Fort James and McGuire Woods to enforce a settlement agreement that was entered into in 1995 between Fort James and Crown, which was ultimately the company that became the debtor in this case. Let me interrupt you for a minute. Let me kind of get down to my concerns about this, leaving aside the Barton Doctrine for a moment. I think it's pretty clear that the Bankruptcy Court has enormous powers under 105. The Bankruptcy Court has on-ramp jurisdiction over all assets of the estate. That's vested at the beginning of the case, wherever located. The automatic stay obviously applies. It's an injunction that applies from the onset of the case. And we've construed 105 as granting significant collateral power to the Bankruptcy Courts to enforce its on-ramp jurisdiction. Leaving aside the Barton Doctrine, which is a separate matter, it looks to me as though what Judge Newsom is doing in this case is saying, I have a confirmed plan, it's operating under my jurisdiction, and regardless of whether permission was needed or not, this case should have been filed because it affects the assets of the estate. It's seeking to stop me. What's fundamentally wrong with that judgment on his part? A couple of points, Your Honor. Primarily, appellants do not argue in this case that Fort James and McGuire Woods should have filed their claim based on the release before Judge Newsom, that is to say in the Bankruptcy Court. Their primary argument all along, including before this Court, has been that Fort James and McGuire Woods should have presented that defense and any adjacent claims for attorneys' fees and any other issues that they raised in the Delaware action to the California courts in the context of the case that the trust and the trustee chose to file in the California courts. One of those actions Pursuant to the confirmed bankruptcy plan. Pardon me? Pursuant to the confirmed bankruptcy plan. The original action was filed by Crown, the debtor in possession. Before the plan was confirmed, following confirmation of the plan, the power to pursue that claim was transferred to the trustee. Right. And the trustee was substituted in as a plaintiff in that case, and then the trust subsequently brought a case in California State court. The assets of the trust are no longer in the possession of the Bankruptcy Court. That's a critical fact that is made clear by the liquidating trust agreement and the plan. Under the plan and the liquidating trust agreement, the assets are transferred to the trust. The trust is entirely dispositive on the disposition of those assets. It lays out the procedure for distribution of the assets. It lays out the priorities that creditors need to follow in order to get their that needs to be followed by the trustee in distributing the assets. The court has no role in that. The court retains jurisdiction over the trust and disputes arising under the trust. But the operation, the function of deciding how the claims should be prioritized, the process of deciding how assets should be distributed, all are laid out in the trust. Yes, but the – if the Bankruptcy Court wanted to turn the trust loose, it would have terminated the bankruptcy case and ceased administration, saying you have a confirmed plan, and thank you very much, and that's the end of it. But it retained jurisdiction over those matters. Right. What import is that in this case? The Court's retention of jurisdiction, I think, is of little import to the issues currently before the Court. The sole basis for the Bankruptcy Court's injunction was Barton, was the notion that under Barton, the plaintiffs in Delaware should have come to him and gotten permission before filing it. He has power under Section 105, but that power cannot alter the provisions of the Bankruptcy Code. The automatic state, by virtue of confirmation of the plan, was lifted as a matter  Sure. The automatic state is no longer in place. Likewise, there was no discharge of the obligations under this contract, which was – which was a completed contract by the time the plan was confirmed. In fact, it had been for several years. Therefore, there is no provision of the Bankruptcy Code that prohibited the Delaware action. I could go through why Barton doesn't do it, but there's no other provision. So that the – the power under 105 is not a freewheeling power under which the Bankruptcy Court can simply adjust the party's contractual rights that preexist the bankruptcy. Now, but the Bankruptcy Court does retain a certain amount of post-confirmation power, particularly when it retains – when it retains jurisdiction. And it may be true that, accepting your argument, that the Delaware action wasn't prohibited by the automatic state or any other provision of the Code. But then the question is, did Judge Newsom properly exercise his powers under – his And it seems to me that, given the power that was – that remained with him, the jurisdiction that was retained post-confirmation, that then that becomes an application of an abuse of discretion standard almost. He did – a couple points about that. He did not retain jurisdiction over actions filed in other courts. He did not retain jurisdiction to regulate actions filed in other courts. That is not within the enumerated recitations of the items over which he retained jurisdiction, which generally relate to the provisions of the plan. Right. If there's a dispute over the execution of the plan, if somebody has a problem with whether the trustee is properly following the plan that's been laid out for distribution, they can go back to Judge Newsom and he has jurisdiction over that. Nothing in the plan gives him exclusive jurisdiction over matters taking place in other courts. Right. And once again, but – But on the other hand, we generally look to a bankruptcy judge's determination and construction of the powers under the plan first, and we defer to that. And he obviously thought that the plan conferred sufficient power on him to enter 105 injunction. But he didn't say that. It's one thing to defer to – It's kind of implied, though. He said Fartin. I mean, it's fine to defer if an abuse of discretion standard properly applies. It's another thing to rewrite what Judge Newsom did. And I don't think it can be said that he made any finding whatsoever that the prosecution of the Delaware action would somehow interfere with any aspect of the plan or fall within any aspect of his direct supervision of the plan. Again – So why doesn't Barton then justify his order, his injunction? The reason Barton doesn't is that Barton, the holding of Barton, which was that permission had to be obtained before you could sue a State-appointed receiver over an operating railroad for something that arose out of the operation of the railroad, has been superseded and or overruled by at least three separate developments. One is 959, which Mr. Loeb discussed, a statutory limitation on the actual holding of Barton, which was the statute says that if the tort suit arises out of the operation of the business by the trustee, he can be sued without permission. The second major development is that in several cases following Barton, most notably the case Realey v. Margolis in 1929, Morris v. Jones in 1940, Fisher, a case called Faust in 1936, and most recently Justice O'Connor's opinion in the Coit case in 1989, all say that there is – that the original – that the original case of the Coit case, the Court's in rem jurisdiction, when you have an appointing court that appoints a receiver or a trustee, the in rem jurisdiction over that – over the rest that involves the receivership or the trusteeship, is not effective, and therefore permission is not required for a suit that seeks only to establish liability against the estate and to reduce a claim to judgment. The rule applies only to an action that directly interferes with the in rem aspect of the Court's jurisdiction, that is to say, the control over the property. If the State court lawsuit seeks to establish a lien outside the process of the receiver – the receivership. What's the property here? Isn't the property a cause of action? The property is the assets that were owned by Crown. That includes the causes of action. The causes of action were then defined as assets of the trust and transferred from the estate into the trust, where they're now held. The assets include the costs of action, the proceeds from the cause of action, are part of the – ultimately become part of the trust assets. But what these cases say, really, Morris, Coit, Faust, and this Court's decision in Morris and Knudsen, which we submitted by a 28-J letter, all say the same thing. The fact that a lawsuit in another jurisdiction, the non-appointing jurisdiction, will affect the size of the estate, even if it directly affects the size of the assets that are in the receivership or the trusteeship, it doesn't matter. Permission is not required, because that does not go to the function of establishing the process of distribution or the function of establishing priorities or the Court's possession of whatever the property may be. In other words, it doesn't establish a lien or a priority in the property. All of them do. And the question on the administration of the State means that the tool of using a liquidating trust in a Chapter 11 is really not going to be available, perhaps, to bankruptcy judges. Because if everybody can run out and start filing claims all over the United States in a local jurisdiction and have them binding on what used to be the bankruptcy race, it defeats the purpose of having this administered to the Bankruptcy Court anyway. I mean, we've used those powers in, I believe it was the Simon case, we said you can use the powers to stop collateral litigation in Hong Kong. I mean, the bankruptcy powers is fairly immense in this regard. So I think what you have, it's a nice tool to have to be able to use a liquidating trust to take this out of the everyday bankruptcy administration. But aren't you really saying that once you do that, the Bankruptcy Court, if we adopt your position, watch out, because we can completely emasculate the fundamental basis on which you created the trust by allowing multiple suits all over the United States that will control or diminish the race that was originally part of the bankruptcy system. But nothing in the trust purports to control where lawsuits are brought, against whom they are brought. The trustee has absolute discretion under the trust to decide where to sue. Now, he sued. The Delaware action is entirely in response to two lawsuits filed by the trustee. Both of which were filed not in the – both of which were filed in – and are being prosecuted in courts other than the Bankruptcy Court. The case against Fort James is being – was brought in district court. The other case was brought in State court. They're now consolidated before Judge Chesney in the district court. Again, appellants do not dispute that the claims raised in Delaware could have been raised in California as counterclaims. They're strictly responsive claims. The claims brought against these defendants, Fort James, McGuire, Woods, and other release parties, were released. That's the only point of the Delaware action. These were – these claims were released. But why isn't that a compulsory counterclaim? It is brought in Delaware State court because – No, I understand what you did. But why isn't that a compulsory counterclaim in the authorized litigation in California? The Delaware action was filed before the answer was filed in California. The answer does preserve the defense in California. However, there's a forum selection clause that was – was the reason why it was filed in Delaware. It was pursuant to an express contractual forum selection clause in the option and settlement agreement. So I think – I think that answers Your Honor's question. Well, I think it is a compulsory counterclaim. The question is whether you can proceed with the collateral. And you did raise that in your answer, you said. Right. So the point is that you can't proceed with the compulsory counterclaim in California. So what happens if we have competing judgments, one in Delaware affirming your release defense and a judgment in the California case that says, no, the compulsory – we reject the compulsory counterclaim? You've raised the compulsory – you've raised the counterclaim – I'm sorry. You've raised the defense of release in your action in California, right? So what happens if we have an issue in Delaware? What prevents – what prevents the possibility of differing judgments on that issue? Well, Morris v. Jones is very clear that the – that if the Delaware case goes to judgment first, that – that judgment is full faith and credit in California, is entitled to full faith and credit by the California court. That was what Morris v. Jones was all about. It was a full faith and credit case. The action was brought without permission in another court, a court that wasn't the appointing court. The defense was raised, well, this should have been brought before the appointing court. The Supreme Court said no. It was perfectly proper to be brought in a non-appointing court because it was – it did not – all it sought to do was liquidate a claim against the estate. And that was perfectly proper and not barred by any rule that governed the administration of the estate. And that judgment was full faith and credit. It – before the receivership court. So it's completely a race to the courthouse for judgment. It – as it always is with a race judicata situation, yes. The first case of judgment that becomes final becomes binding in the other court. That's – there's nothing wrong with that. That's exactly what Morris v. Jones said. Except in the context of bankruptcy, which is designed to try to avoid that very thing. Now, I understand your argument that this is not a bankruptcy case, per se, that the transfer of the liquidating trust means that the usual bankruptcy rules don't apply, but – And none of it is in the bankruptcy court. It is all being litigated in places other than the bankruptcy court. And no one's saying that it should be litigated in the bankruptcy court. But that's not uncommon in a bankruptcy. No. The bankruptcy court can authorize suits anywhere in the country, but retains ultimate authority on how the suits are ultimately processed. In other words, it controls the litigation. It is not controlled by the litigation. That's true, but the case law says that the – that the bankruptcy court doesn't control any and all litigation that may be filed properly against the estate. That the – that that is not the function of the bankruptcy court or of the trustee. That if there are claims against the estate and they're being pursued in – in a proper court where there's proper jurisdiction, that it does not implicate the rules requiring permission of the bankruptcy court. In addition here, I think the third development I was going to say in response to Judge Fischer's question – I diverted you. My apologies. Go ahead. No, that's quite all right. Was – was simply that the – that the imposition of the bankruptcy code structure, as we pointed out in our brief, does affect how this permission rule operates. Because now you have the automatic stay, which – which is commenced automatically upon the filing of the petition and then terminates under – under the – under the provisions of the Act itself. The stay terminates when a plan, such as the one that was done here, is confirmed. Likewise, the obligations that are not discharged in the bankruptcy remain obligations of the debtor. Here we have an express contractual obligation of the debtor that said these claims are released. It also said that anyone forced to defend these claims needs to pay – be reimbursed for their reasonable attorney's fees. It also said that any lawsuit brought to enforce or – or arising out of this agreement shall be brought in this – in the State or Federal courts in Delaware, which is exactly what was done. Now, here, in addition to the problems with Barton, this lawsuit doesn't implicate the concerns of Barton for the reasons I've just described. The – the bankruptcy court enjoined the proceeding without considering the fact that the automatic stay had been lifted, without considering the forum selection clause, and without considering the fact that – that Crown, the trustee and the trust, did not say that the action shouldn't go forward. What they were saying was the action should go forward only in California. Judge Chesney correctly said that the Court failed to give proper weight to and consideration of the forum selection clause. I think we have your argument in hand, and I appreciate your patience with my interruptions. Is there anything else you'd like to add quickly? I'm not sure how much time I have remaining. You're over by 5 minutes. In that case, if we could. We have – even though you weren't able to touch on many of the points in your briefs, you haven't waived anything, and we will consider them carefully. So the questions I had were mostly driven by concerns I had that were not perhaps addressed directly in the briefs, so hence my questioning. I think I've used up any time that I might have otherwise had for rebuttal. Thank you, Your Honor. Your Honor, I just wanted to correct a couple of factual things that may impact your decision-making. The first case filed amongst these parties was filed by Fort James. In the bankruptcy court against Crown while it was still a debtor in possession. That was in April of 2001. The next case that was filed, which is the first case Crown filed, was in the bankruptcy court against Fort James. That case, Fort James brought a motion to dismiss in the bankruptcy court. That motion to dismiss was denied in its entirety by Judge Newsom. Fort James then filed an answer. This is long before the Delaware case was filed. So to the extent that Ms. Miles may have given the impression that somehow we were filing after Delaware or something like that, that's factually inaccurate. Secondly, the confirmed plan of reorganization expressly, expressly states that the And these are the exact clauses of action we're bringing. So again, to the extent that Ms. Miles may have stated that the plan of confirmation does not say that, it does. And it's in the record, and I refer the Court to it. And last, I would just like to state in sum that we are not saying that they can't assert the positions they're asserting in Delaware. But we're saying that the bankruptcy court should determine where and whether they can state it. We believe they've already stated these issues and put them at issue in California and that they therefore have a perfectly good legal remedy in California, one that they, which is really the continuation of the cases that they started in the bankruptcy court. The reference was withdrawn, and now the case is in district court. Thank you, Your Honor. Thank you very much. Thank you all. Very helpful argument. Yes, it was. And thanks for it. The briefing is very good, and we appreciate you sticking within the time limitations that we have. With that, we'll be in recess.
judges: Thomas, Fisher, Robart